585 A.2d 1129

**Gail P. HILL, Appellant,**

**v.**

**PORT AUTHORITY TRANSIT SYSTEM OF ALLEGHENY COUNTY, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Oct. 1, 1990.

Decided Jan. 4, 1991.

Reargument Denied March 4, 1991.

134

Arthur L. Schwarzwaelder, Dickie, McCamey & Chilcote, P.C., Pittsburgh, for appellant.

Michael F. Flaherty, Flaherty & Sheehy, P.C., Pittsburgh, for appellee.

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

SMITH, Judge.

This matter comes before this Court on remand from the Pennsylvania Supreme Court which has ordered reconsideration of this Court's decision in *Hill v. Port Authority Transit System of Allegheny County*, 125 Pa.Commonwealth Ct. 69, 557 A.2d 430 (1989), *appeal granted, remanded*, 524 Pa. 466, 573 A.2d 1026 (1990) (*Hill I*), in light of the Supreme Court's recent decision in *Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990), in which the Port Authority of Allegheny County (Authority) was held to be a Commonwealth agency. In *Hill I,* this Court held that pursuant to Section 8553(d) of the Judicial Code (Code), 42 Pa.C.S. § 8553(d), the Authority, as a local agency, was entitled to a set-off or deduction of collateral source benefits from damages recoverable by Gail P. Hill (Hill) against the Authority pursuant to the Pennsylvania No–Fault Motor Vehicle Insurance Act[1] (No–Fault Act). The questions presented for reconsideration on remand are whether the Authority, in light of *Marshall,* is still entitled to a set-off and whether this Court should modify its prior holding related to Hill's entitlement to interest and attorney's fees.

The factual background will be briefly summarized. On December 1, 1982, Hill filed a complaint in assumpsit in the Court of Common Pleas of Allegheny County to recover from the Authority basic loss benefits, as well as attorney's fees and interest, under the No–Fault Act. The complaint alleged that Hill suffered personal injuries when she was

1. Act of July 19, 1974, P.L. 489, 40 P.S. §§ 1009.101–1009.701, repealed by the Act of February 12, 1984, P.L. 26.

struck on December 15, 1980 by a bus owned and operated by the Authority. The Authority denied liability on grounds that Hill maintained an insurance policy with Allstate Insurance Company at the time of the accident and that the Authority was not, therefore, the primary obligor. Prior to trial, by amended answer and new matter, the Authority asserted the defense of governmental immunity under Section 8541 of the Code, 42 Pa.C.S. § 8541.

Following a non-jury trial, by opinion and order dated April 15, 1987, the trial court awarded Hill $13,365.55 for allowable hospital and medical expenses not covered by Blue Cross and Blue Shield and $7,542.52 for wage loss. Total hospital and medical expenses were $66,716.41 and the total wage loss claimed by Hill was $17,663. The award reflected a set-off of collateral source benefits which the trial court permitted under the limited recovery provision of Section 8553(d) of the Code.[2] Blue Cross and Blue Shield paid $55,359.86 of the hospital and medical expenses and Hill received $7,457.40 through an employer disability insurance plan. The trial court also granted Hill interest on the award at the rate of 18% from the date of trial and denied her request for attorney's fees.

By opinion and order dated April 11, 1989, this Court affirmed that part of the trial court's decision limiting damages to those losses not covered by Hill's private insurance; reversed the trial court's order on the issue of attorney's fees and interest; remanded the case for a determination of reasonable attorney's fees; and adjusted interest to

2. Section 8553(d) provides that:
   If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under subsection (c), the amount of such benefits shall be deducted from the amount of damages which would otherwise be recoverable by such claimant. This Court concluded in *Hill I* that the case falls within Section 8542(b)(2) of the Code pertaining to personal property within the care, custody or control of a local agency, and thus, the damages provisions of Section 8553(d) were applicable. Statutory provisions relating to local agencies are set forth at 42 Pa.C.S. §§ 8541–8564.

reflect an 18% accrual rate from December 20, 1984 rather than from the date of trial.

## I

Hill first contends that this Court should vacate its order affirming the trial court's decision which allowed the set-off under Section 8553(d) of the Code because the Supreme Court's ruling in *Marshall* found the Authority to be a Commonwealth agency and, hence, rendered Section 8553(d) inapplicable. Hill also contends that in light of *Marshall*, Section 8528 of the Code, 42 Pa.C.S. § 8528, applies and that Section 8528, which governs limitations on damages recoverable against a Commonwealth agency, does not allow set-off of any kind. Therefore, Hill argues, in the absence of any statutory set-off provision, she is entitled to full recovery of basic loss benefits from the Authority notwithstanding collateral source payments from private insurance because double recovery is permitted under Section 203 of the No–Fault Act, 40 P.S. § 1009.203.

Hill correctly argues that *Marshall* renders Section 8553(d) no longer applicable. Section 8553(d) specifically permits a local agency to deduct insurance benefits received by a claimant from damages recoverable from the local agency. However, the Authority as a Commonwealth agency is afforded sovereign immunity, not local governmental immunity, as provided by Section 8522 of the Code, 42 Pa.C.S. § 8522. Thus, Hill's claim for damages against the Authority is governed by statutory provisions relating to Commonwealth parties, specifically found at 42 Pa.C.S. §§ 8521–8528.[3]

As this Court held in *Hill I*, the language of Section 8553(d) of the Code clearly and unambiguously

---

**3.** Hill continues to argue that her action against the Authority is contractual in nature and that as such, the Political Subdivision Tort Claims Act is inapplicable since it pertains only to actions in tort. The arguments advanced by Hill fail to persuade this Court to reject its prior determination that the "essential character" of Hill's action is one for damages and that the governmental immunity provisions of the Code are in fact applicable and must be considered. *See Hill I.*

authorizes a set-off for a local agency protected by governmental immunity. If such set-off was available to a Commonwealth agency, such as the Authority, then the General Assembly would have included express language to that effect in the statutory framework for sovereign immunity. Where the language of a statute is clear and unambiguous, this Court will not add matters that the Legislature saw fit to exclude, particularly where it appears that such exclusion is intentional. *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987). Consequently, this Court must conclude that exclusion of a statutory set-off or deduction provision for Commonwealth agencies was intentional and, therefore, the Authority is prohibited from deducting as a matter of statutory right collateral source payments from any damages recoverable against the Commonwealth agency.

In *Commonwealth v. Twentier*, 76 Pa.Commonwealth Ct. 537, 464 A.2d 642 (1983), this Court held that the express statutory prohibition of assessment of delay damages against a local agency made it clear that the omission of such prohibition from Section 8528 of the Code, pertaining to limitation on damages against Commonwealth parties, indicated that the Legislature did not intend Commonwealth agencies to be immune from the assessment of delay damages. Simultaneous re-enactment of governmental and sovereign immunity provisions of the Code signified the Legislature's deliberate exclusion of delay damages immunity for the Commonwealth. By analogy, this Court now decides that inclusion of the set-off provision in Section 8553(d) for a local agency and exclusion of a similar set-off provision for Commonwealth agencies manifest a Legislative intent that a Commonwealth agency be denied a set-off or deduction of collateral source benefits from any damages recoverable against the Commonwealth agency.

The Authority, however, contends that it is entitled to a set-off of collateral source benefits pursuant to Section 8526 of the Code, 42 Pa.C.S. § 8526. (The Authority acknowledges that no cases have interpreted the meaning of Section 8526.) Assuming arguendo that Section 8526

is applicable to the matter *sub judice*, the Authority is further prohibited from claiming a set-off of collateral source benefits. Section 8526 provides:

> § 8526. Counterclaim by the Commonwealth.
>
> In any action initiated under this subchapter, the Commonwealth may set forth any cause of action or *set-off which it has against the plaintiff. A counterclaim need not diminish or defeat the relief demanded by the plaintiff.* It may demand relief exceeding in amount or different in kind from that demanded by the plaintiff. (Emphasis added.)

It is true that Section 8526 generally authorizes a set-off against a plaintiff in any action filed under the subchapter; however, a set-off is permitted only when the Commonwealth agency asserts a counterclaim in the action filed against the Commonwealth agency.

Section 1924 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1924, provides that the title of a statute may be considered in the construction of a statute. *Fedor v. Borough of Dormont,* 36 Pa.Commonwealth Ct. 449, 389 A.2d 217 (1978), *aff'd.,* 487 Pa. 249, 409 A.2d 334 (1979). The title, as well as the text, of Section 8526 indicates that a set-off for a Commonwealth agency is reserved for circumstances in which a counterclaim has been asserted. Because the Authority has not filed a counterclaim in the present litigation, this Court finds Section 8526 inapplicable.

More importantly, under Pennsylvania law, a counterclaim is a claim by the defendant in opposition to or deduction from the plaintiff's claim and encompasses a set-off, which represents a demand against the plaintiff possessed by the defendant arising from a transaction extrinsic to plaintiff's cause of action. The set-off, if allowed, permits an affirmative judgment for the defendant. *J.B. Hunt Transport, Inc. v. Falcon Transport Co.,* 723 F.Supp. 359 (W.D.Pa.1989); *M.N.C. Corp. v. Mount Lebanon Medical Center, Inc.,* 510 Pa. 490, 509 A.2d 1256 (1986); *Stulz v. Boswell,* 307 Pa.Superior Ct. 515, 453 A.2d 1006 (1982). Nothing in the record here indicates that Hill

is in any way indebted to the Authority or that it has a claim arising out of a transaction extrinsic to Hill's cause of action. The Authority's position that Section 8526 authorizes a set-off or deduction from any damages recoverable from the Authority is simply not supported by the law. Moreover, since the Authority failed to file a counterclaim setting forth whatever claims the Authority believed it possessed against Hill, Section 8526 is therefore inapplicable and may not be relied upon to defeat Hill's demand for recovery of no-fault benefits from the Authority.[4]

## II

As to the matter of double recovery of benefits, the law of this Commonwealth recognizes that under certain circumstances a double recovery is permissible. In *Steppling v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 328 Pa.Superior Ct. 419, 477 A.2d 515 (1984), the court considered the question of whether a claimant may recover within meaning of the No–Fault Act hospital and medical expenses previously paid on behalf of the claimant by a private Blue Cross plan. The court analyzed Section 203 of the No–Fault Act in reaching its decision and stated that this section allows an owner or operator of a motor vehicle to elect to provide security for basic loss benefits through a private plan of insurance, typically provided by an employer, thereby designating the no-fault auto insurance policy as excess coverage to the private insurance plan. In this instance, the no-fault insurer must reduce the premium to

---

4. The Authority raises an additional argument that pursuant to Section 106 of the No–Fault Act, 40 P.S. § 1009.106, the Authority may offset from any sums which Hill is entitled to recover, those benefits received on the basis of Hill's intentional misrepresentation regarding insurance coverage. This argument need not be fully addressed because of the ruling herein; nevertheless, suffice it to say that the Authority has neither paid no-fault benefits to claimant for which the Authority may be reimbursed nor properly asserted a claim against claimant to invoke remedies under this Section. Further, the Authority's contention that Hill should be precluded from receiving any no-fault benefits pursuant to Section 104 of the No–Fault Act, 40 P.S. § 1009.104, is likewise rejected.

reflect the reduced exposure. In allowing double recovery of incurred expenses, the court in *Steppling* stated:

> In this case, the insured made no election and received a policy of insurance which included basic loss benefits. The insured received no reduction in his premium payments, and PMA does not contend otherwise. Because the election designating Blue Cross as the primary insurer and PMA as excess with respect to professional medical treatment and care was not made, we find no bar in Section 203 to the within claimant's right to recover under the PMA policy.

This conclusion is consistent with the analysis of private collateral benefits found in the treatise on the No–Fault Act published by the Pennsylvania Trial Lawyers Association. D. Shrager, ed., *The Pennsylvania No-fault Motor Vehicle Insurance Act* (1979). In that work, the editor states, at page 148:

> The 'benefits other than no-fault benefits' referred to in Section 203(a) clearly envisions medical and hospitalization plans paid for in whole or in part by the victim's employer. *The section does not prevent the victim from realizing a double recovery.* It simply requires that any savings which result from an offset provision in any medical or hospitalization plan must be passed on to the individual employee. (Emphasis in original.)

*Id.,* 328 Pa.Superior Ct. at 427–428, 477 A.2d at 519.

In yet another case which dealt with the question of double recovery in the context of entitlement to both survivor's benefits and work loss benefits under the No–Fault Act, the Supreme Court allowed such double recovery in *Allstate Ins. Co. v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980). In passing comments on the general question of double recovery under the No–Fault Act, the Supreme Court noted:

> Even assuming such potential for double recovery, this fact, in and of itself, does not necessarily evidence a legislative intention to deny 'work loss' benefits to survivors. As appellee Pontius points out in his brief, the

legislature has allowed double recovery of other benefits under the Act. For example section 203 of the Act concerning Collateral Benefits permits victims to recover their medical expenses from Blue Cross and Blue Shield and then recover the same expenses a second time from the no-fault carrier. It is apparent that the 'vice' of double recovery was not foremost in the minds of the legislators when the No–Fault Act was enacted.

*Id.*, 491 Pa. at 459, 421 A.2d at 635–36. It is therefore evident from previous holdings by courts of this Commonwealth that the possibility of double recovery of private insurance benefits and no-fault basic loss benefits, under certain circumstances, does exist and is not per se prohibited by the Legislature in the No–Fault Act.

### III

The foregoing analysis, however, leads to the pivotal question in the matter *sub judice* as to Hill's entitlement to double recovery of the collateral source payments received by her. Section 203 of the No–Fault Act reads as follows:

§ 1009.203. Collateral benefits.

(a) If benefits other than no-fault benefits are provided to an individual through a program, group, contract or other arrangement for which some other person pays in whole or in part that would inure to the benefit of a victim or the survivor of a deceased victim injured as a result of an accident in the absence of no-fault benefits, then any reduction or savings in the direct or indirect cost to such person of such benefits resulting from the existence of no-fault benefits shall be returned to such individual or utilized for his benefit.

(b) The owner or operator of a motor vehicle may elect to provide for security in whole or in part for the payment of basic loss benefits through a program, group, contract or other arrangement that would pay to or on behalf of the victim or members of his family residing with him or the survivor of a deceased victim, allowable expenses,

loss of income, work loss, replacement services loss and survivors loss. In all such instances, each contract of insurance issued by an insurer shall be construed to contain a provision that all basic loss benefits provided therein shall be in excess of any valid and collectible benefits otherwise provided through such program, group, contract or other arrangement as designated at the election of the owner or operator which shall be primary.

(c) An insurer providing basic loss benefits and tort liability in accordance with the provisions of subsection (b) above shall reduce the cost of such contract of insurance to reflect the anticipated reduction in basic loss benefits payable by the insurer by reason of the election of the owner or operator to provide substitute security.

A clear reading of Section 203 indicates, inter alia, a legislative intent that a no-fault claimant covered by private insurance as well as a no-fault policy of insurance shall be entitled to recover basic loss benefits under a no-fault insurance policy for which the claimant has paid full premium. The fact is undisputed that Hill did not possess a no-fault policy of insurance with Allstate Insurance at the time of the accident as she originally represented to the Pennsylvania Department of Motor Vehicles. On this point, the trial court specifically found that Hill intentionally misrepresented her insurance status and hence would not be permitted to profit from her misrepresentation. Trial Court Opinion, April 14, 1987, p. 8. Further, there is no evidence of record that Hill possessed any other no-fault policy of insurance for which she paid full premium and on which she failed to elect the option of designating her private insurer as primary insurer. *Steppling.*

In *Steppling,* insurance coverage was provided by a private Blue Cross plan as well as a no-fault policy by the Pennsylvania Manufacturers' Association Insurance Company. In this regard, the court quoted from dicta in *Killeen v. Travelers Ins. Co.,* 721 F.2d 87, 89 (3d Cir.1983):

If an individual, injured in an automobile accident is covered by a no-fault automobile insurance policy and, in addition, by a general health and accident policy, he or she may be entitled to reimbursement under each such policy for hospital and medical expenses incurred as a result of a motor vehicle accident. What amounts to a double recovery is allowed because the insured has paid two premiums and is entitled to the benefits purchased under each policy. Where, however, the injured individual is not covered by a privately purchased no-fault automobile insurance policy, but is covered only under a general health and accident policy, the reimbursements available through the Assigned Claims Plan will not, unless a statutory exemption applies, allow a double recovery for incurred hospital and medical expenses. (Footnote omitted.)

Thus, the logical conclusion to be reached from an analysis of existing law is that double recovery of incurred hospital and medical expenses and lost wages should not be permitted under the circumstances in this case since Hill did not maintain a separate policy of no-fault insurance coverage for which she paid full premium. Hill simply does not fall within the class of insured motorists covered by Section 203. *See also Hauck v. Ohio Casualty Group of Ins. Companies*, 361 Pa.Superior Ct. 370, 522 A.2d 628, *appeal denied*, 516 Pa. 641, 533 A.2d 712 (1987) (double recovery is permitted where an individual pays premiums on two separate policies of insurance covering the same potential liability).

Upon reconsideration of the issues presented in this case, it is the decision of this Court that the Authority, as a Commonwealth agency, is not entitled, under Code provisions relating to Commonwealth parties, to a set-off of collateral source payments from any damages recoverable against the Authority. However, it is clear, under the circumstances here, that Hill is not entitled to a double recovery of basic loss benefits for the reasons discussed in this opinion. Thus, the order entered in *Hill I* which sustained the trial court's award for hospital and medical expenses and loss wages is therefore affirmed, albeit on

different grounds. In all other respects, the decision in *Hill I* stands.[5] The following order will be entered.

## ORDER

AND NOW, this 4th day of January, 1991, having reconsidered this Court's opinion and order dated April 11, 1989 upon remand from the Pennsylvania Supreme Court pursuant to *Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 568 A.2d 931 (1990), the order of April 11, 1989 is hereby affirmed for the reasons discussed in the foregoing opinion.

This case is remanded to the Court of Common Pleas of Allegheny County for further proceedings. Jurisdiction is relinquished.

**5.** Both parties request this Court to reconsider its decision to assess 18% interest on the award from December 20, 1984 to the date of payment of the award and to remand the case to the trial court for calculation of reasonable attorney's fees for the period following *City of Philadelphia v. Nationwide Ins. Co.*, 92 Pa.Commonwealth Ct. 20, 498 A.2d 462 (1985), up through post-trial proceedings. Neither Hill nor the Authority has advanced new arguments in support of their previous positions on the matter of interest and attorney's fees, and hence, this Court's prior ruling on the matters in *Hill I* will not be disturbed.