## Moorhead v. Crozer Chester Medical Center

C.P. of Delaware County, no. 94-5637.

*Joseph M. Fioravanti,* for plaintiff.
*Daniel J. Sherry,* for defendant.

BRADLEY, *J.,* March 4, 1997—This medical malpractice action was tried to a jury verdict in plaintiff's favor. A legal issue arose concerning the correct measure of damages for the decedent's post-liability medical expenses. After briefing and oral argument, the court held that the correct measure of damages was limited to the amount allowed by Medicare and accepted by the defendant, Crozer Chester Medical Center, as payment in full rather than the higher amount billed by defendant but for which plaintiff had no liability or responsibility to pay. This is the sole legal issue raised by plaintiff on this appeal. The parties submitted an *Agreed Upon Statement of Record* pursuant to Pa.R.A.P. 1924 which suggests the operative facts.

The issue presented is novel, and will undoubtedly arise with increasing frequency as medical insurance providers continue to negotiate rate schedules with health care providers that pay these providers substantially less than the amount billed for medical services. In the instant case, this disparity between the amount billed by defendant, $108,668.31, and the amount accepted by defendant as payment in full, $12,167.40, equals $96,500.91. The question becomes: What is the correct measure of compensatory damages for medical expenses, the amount billed by the hospital or the amount received by the hospital as payment in full?

It is well-established that a plaintiff in a personal injury action seeking damages for the cost of medical services provided to him as a result of a tort-feasor's wrongdoing is entitled to recover the reasonable value of those medical services. See *e.g., Ratay v. Liu,* 215 Pa. Super. 547, 551, 260 A.2d 484, 486 (1969). A review

of that line of cases however, reveals that the amount billed for the medical services equalled the amount paid or expected to be paid for those services. Implicit in the concept of reasonable value of medical services was the notion that the value of the services equalled the amount billed for the services which consequently equalled the amount paid for the services and for which the patient could be contractually obligated. Where there is a discrepancy between the amount billed by the provider and the amount paid to the provider as total satisfaction, should not medical expense recovery long regarded as making a plaintiff whole restrict recovery to the amount accepted by the medical provider? Otherwise, plaintiff would reap a windfall as to the difference between the amount paid and the amount billed. To allow recovery of the total bill would effectively allow damages more in the nature of punitive damages, than compensatory damages, to be imposed against defendant.

The collateral source rule has been raised as an issue in this action. The collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer. See generally, *Beechwoods Flying Service Inc. v. Al Hamilton Contracting Corp.,* 504 Pa. 618, 476 A.2d 350 (1984). While we believe that the $12,167.40 paid by Medicare is governed by the collateral source rule, to wit, that plaintiff could recover that amount from the defendant-tort-feasor despite the fact that amount was paid by Medicare, we fail to see how the difference between the amount billed by the hospital and the amount paid by Medicare is likewise subject to the collateral source rule. The hospital did not choose to forgive that difference, in which case the collateral

source rule may apply, rather the hospital is obligated to accept the Medicare reimbursement schedule as payment in full if it accepts Medicare patients for treatment.

One Superior Court decision discusses the issue at bar. See *Kashner v. Geisinger Clinic,* 432 Pa. Super. 361, 638 A.2d 980 (1994) *(reh'g denied* 4/11/94). Both parties find support for their respective positions in that decision. In *Kashner,* plaintiff was treated at Geisinger Medical Center and Geisinger Clinic by Dr. Arthur Colley. In a subsequent medical malpractice case where all three providers were defendants, Geisinger Clinic and Dr. Colley were each found 50 percent negligent. The trial court limited the amount of medical expenses submitted to the jury to those amounts paid by the Department of Public Welfare. DPW had paid a fraction of plaintiff's medical bills, the remainder were "written off" by GMC and forgiven by the clinic. On appeal, the Superior Court found that the trial court erred in precluding plaintiff from proving medical expenses in excess of those amounts paid by the DPW.

*Kashner* is distinguishable because Geisinger Clinic, as a separate corporate entity found liable to plaintiff, was not allowed a credit for the GMC's "forgiveness" of a portion of its bill. The court appeared to endorse the propriety of such a credit if GMC and Geisinger Clinic could properly be considered one corporate entity. Furthermore, in footnote 7, the court noted that "the amount of damages assessed against the clinic should be reduced to the extent that the reasonable value of the medical services provided and billed by the Clinic exceeds the DPW's payment." *Id.* at 369 n.7, 638 A.2d at 984 n.7.

The holding in *Kashner* supports in essence what was done in the instant case. The jury was only allowed

to consider $12,167.40 in medical expenses because if the jury had been permitted to consider the bills totalling $108,668.31, defendant would have been entitled to a set-off of $96,500.91, thus resulting in the same net award of compensatory damages. Also, in *Kashner,* the court noted "that the amount that was actually paid to GMC for Mrs. Kashner's medical services may be relevant in determining the reasonable value of those services, (citations omitted) and that other factors to be considered by the jury are the amount billed to the plaintiff and the relative market value of those services." *Id.* (footnotes omitted) In the instant case, no amount was ever billed to plaintiff's decedent, precisely because she was a Medicare recipient and the defendant was obligated to accept Medicare payments as total satisfaction.

Finally, we note that if the amount of money paid to the provider for the medical treatment is not considered equal to its reasonable value, as a practical matter that would require a mini-trial in each personal injury action where the jury would be presented with conflicting, economic evidence on how to calculate the reasonable value of medical services provided to the plaintiff. This scenario is impractical, unrealistic and cost-prohibitive. It would emasculate the concept of compensatory damages by permitting plaintiffs to recover more than they are responsible for; such recovery is best left to the concepts of pain and suffering, loss of life's enjoyment and punitive damages.

## AGREED UPON STATEMENT
## PURSUANT TO PA.R.A.P. 1925

The parties agree that the following facts may be submitted on appeal in lieu of the printed record within

the time allowed pursuant to Pa.R.A.P. 1931 and with the approval of the court.

(1) A verdict has been returned and judgment entered for plaintiff and against defendant in the above-entitled action.

(2) The question of compensation for past medical expenses was submitted to the court's consideration while all other matters were decided by the jury.

(3) The past medical expenses at issue consisted solely of expense incurred for medical care and treatment provided to plaintiff's decedent by defendant, Crozer Chester Medical Center, and billed by Crozer Chester Medical Center.

(4) Plaintiff's decedent was covered in connection with the medical bills incurred as a result of defendant's medical malpractice, by Social Security Medicare benefits supplemented by additional coverage, purchased by the decedent, entitled "Blue Cross 65." Decedent's Social Security benefits were vested to her after her worklife employment and contributions. Decedent paid premiums for the "Blue Cross 65" supplement.

(5) The parties agreed that the fair and reasonable value of decedent's post-liability medical treatment was $108,668.31, the amount which was billed by defendant for medical treatment rendered after the decedent was injured by the defendant's medical malpractice.

(6) Plaintiff argued that the verdict should be $155,168.31 ($108,668.31 plus the jury verdict of $46,500) plus delay damages. Defendant argued that the compensable past medical expenses were limited to the amount allowed by Medicare: $12,167.40, for a total verdict of $58,667.40 plus delay damages. Of that $12,167.40 allowed by Medicare, 80 percent was

paid by Medicare and the remaining 20 percent was paid by Blue Cross 65.

(7) $12,167.40 was accepted by defendant as full payment for decedent's post-liability medical bills.

(8) Defendant, Crozer Chester Medical Center, accepted the Medicare allowance of $12,167.40 as payment in full pursuant to defendant's voluntary participation in the Medicare program. Also as a result of defendant's participation in the Medicare program, defendant is not permitted to seek nor did it seek any further payment on those expenses beyond the $12,167.40 from plaintiff's decedent or any other source.

(9) The plaintiff's decedent is not and could not become legally obligated to pay any amount greater than the amount allowed by Medicare ($12,167.40) as payment in full of the subject medical expenses.

(10) The trial court ordered that $12,167.40 be added to the amount of the jury's verdict.

(11) The total verdict was $58,667.40, plus delay damages.